MJC:mes 6615/10 \pleading\661510objectmquash.wpd

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

| | | |
|---|---|---|
| MAUREEN E. McNAMARA | : | |
| | : | |
| VS. | : | C.A. NO. 06-270ML |
| | : | |
| CITY OF NEW BEDFORD, NEW BEDFORD POLICE DEPARTMENT, PATROLMEN ANDY SIMMONS, GREG DEMERSE and PAUL SILVA | : | |

**DEFENDANTS' OBJECTION TO MOTION TO QUASH/PROTECTIVE ORDER**

Now come the defendants and object to that motion to quash and/or for protective order filed by Newport Hospital with regard to subpoenas issued for medical records relating to one Dora Graca and Shaun Sullivan. In support hereof, your defendants have filed a memorandum of law.

DEFENDANTS,
By their Attorney,

/s/ Michael J. Colucci
Michael J. Colucci, Esq. #3302
OLENN & PENZA, LLP
530 Greenwich Avenue
Warwick, RI 02886
PHONE: (401) 737-3700
FAX: (401) 737-5499

**CERTIFICATION**

I certify that I sent a true copy of the within on 8/31/06 to:

Armando O. Monaco, II, Esq.
P.O. Box 311
East Greenwich, RI 02818

Linn F. Freedman, Esq. (Attorney for Newport Hospital)
Nixon Peabody LLP
One Citizens Plaza
Providence, RI 02903

Dora S. Graca
Shaun Sullivan
341 Coggeshell Street
New Bedford, MA 02746

/s/ Maureen E. Sundin

MJC:mes 6615/10 \pleading\661510memoobjmquash.wpd

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

| | | |
|---|---|---|
| MAUREEN E. McNAMARA | : | |
| | : | |
| VS. | : | C.A. NO. 06-270ML |
| | : | |
| CITY OF NEW BEDFORD, NEW BEDFORD POLICE DEPARTMENT, PATROLMEN ANDY SIMMONS, GREG DEMERSE and PAUL SILVA | : | |

**DEFENDANTS' MEMORANDUM OF LAW IN SUPPORT OF OBJECTION TO MOTION TO QUASH/PROTECTIVE ORDER**

## I. BRIEF STATEMENT OF FACTS

This claim arises out of a "high speed pursuit," so-called, occurring on July 3, 2003, in Tiverton, Rhode Island. Plaintiff, Maureen McNamara, was struck by a vehicle operated by Shaun Sullivan. Sullivan and a passenger in his vehicle, Dora Graca, were fleeing from New Bedford police officers who had attempted a motor vehicle stop in New Bedford, Massachusetts. After the collision, Ms. Graca was apprehended at the scene. Mr. Sullivan had fled the area on foot as police were arriving on scene and was later apprehended in a nearby wooded area with the assistance of K-9 Units.

Sullivan and Graca were boyfriend/girlfriend at the time. Ms. Graca had certain warrants outstanding for her arrest as of the day of this incident. On the night of his arrest, Sullivan claimed that he and Ms. Graca had been chased into Rhode Island by New Bedford police, and also claimed that a third individual, one Trey Semple, was initially driving the vehicle in New Bedford and that along the way, Trey jumped out when the vehicle hit the "first guardrail" and Sullivan, who had been sitting in the rear seat, jumped into the driver's seat, took off from the police, came to Rhode Island and crashed. In conjunction with the statements, Sullivan also claimed that he was light headed and ill and requested medical attention, see Exhibit 1 (report of Tiverton police Sgt. Nicholas Maltias) at page 3.

That same night, Ms. Graca likewise complained of injury and requested medical attention. *Id.* On the following morning she gave a formal statement (see Exhibit 2) wherein she also claimed that the so-called individual, Trey Semple, had initially been driving and that he had struck a guardrail on Route 195, possibly in Fall River, Massachusetts. Trey then got out of the vehicle and "was gone" after which Shaun assumed the driving. She goes on to state that they were almost near Rhode Island, on a highway, when "we hit this car…finally hit the guardrail" after which "I remember Shaun jumping out of the car and booking it." (See Exhibit 2 at page 2.) Graca went on to state that "the police never stopped chasing us until our car crashed and I got arrested. The cop car was right behind us." *Id.*

Police reports relating to the incident indicate that the pursuing officers broke off the active chase upon reaching the Rhode Island border, where upon they continued forward with the ultimate objective of exiting the highway. However, they came upon the accident scene and were soon joined at that location by Tiverton (Rhode Island) and Rhode Island State Police.

## II. ARGUMENT

Ms. Graca gives an account indicating that the police actively pursued the fleeing vehicle right up until the time of the crash. Sullivan made statements which might be suggestive of the same thing. Sullivan's statements were made shortly after his arrest. Ms. Graca's statements were made approximately 12 hours later. Both sought medical attention at the Newport Hospital. It goes without saying that whether or not the police were still actively pursuing the Sullivan/Graca vehicle is a critical issue in the case. Moreover, both Graca and Sullivan made rather bizarre statements about a third individual, one Trey Semple, as being the one who was driving the vehicle and initially fled from the police. Semple then crashed somewhere along the way, fled the area at which time Sullivan, in a panic, resumed driving until the ultimate crash. Police reports concerning the incident do not indicate the presence of a third individual at any time. Nor was such an individual apprehended despite the presence of several officers from at least three different police agencies.

Accordingly, the credibility of Graca and Sullivan becomes a critical issue in this matter as well as their capacity to perceive the events as they truly unfolded and accurately report thereon. Perhaps they were impaired by the injuries sustained in the collision(s) or perhaps they were

otherwise impaired. Your defendants have a right to confront such adverse witnesses and the information relating to their medical treatment on the evening in question (which is all the subpoenas seek) could shed great light on this issue.

Newport Hospital, in its motion to quash, correctly cites a Rhode Island statute which deals with confidential healthcare information in court proceedings, R.I.G.L. §5-37.3-6.1. That statute, as will be discussed momentarily, provides for the disclosure of such information, pursuant to subpoena, where certain conditions are met. With regard to Sullivan, those conditions have already been met. With regard to Graca, this Court may order disclosure if it is satisfied, after review of the six factors listed in the statute, that disclosure ought to be made.

Under such statute, a healthcare provider or custodian of healthcare information (Newport Hospital) may disclose confidential healthcare information if the disclosure is pursuant to a subpoena and it receives written certification by the party issuing the subpoena (i.e. the defendants) that:

(1) A copy of the subpoena has been served…on the individual whose records are being sought together with a notice of the individual's right to challenge the subpoena; or if the individual cannot be located within this jurisdiction, that an affidavit of that fact is provided; and

(2) Twenty days have passed from the date of service…and within that time period the individual has not initiated a challenge. *Id.*

A certification of such notice to Sullivan and Graca was provided to Newport Hospital as evidenced in the subpoena documents "attached as Exhibit A" in the Hospital's motion to quash, see Exhibit A (to motion to quash) document labeled as "Attorney Certification/Right to Challenge." Said certification was issued on August 9, 2006. To date (August 30, 2006), no such challenge has been initiated by Sullivan or Graca. However, the notification sent to Graca has since been "returned to sender" as being undeliverable (Exhibit 3 attached hereto). No such return was made with regard to Sullivan and therefore it is presumed that he received his notice.

Accordingly, and according to the statute relied upon by Newport Hospital, there is nothing further to decide with regard to Sullivan. He received the proper notification and he has not initiated a challenge. Therefore, the hospital is required to produce the information and there is no basis to quash the subpoena. The statute does not give the Court any discretion when such conditions are met.

With regard to Graca, your defendants, admittedly, cannot make the same argument because her notification was returned as undeliverable. Although the information available to the defense was that both Sullivan and Graca were residing at the same address, your defendants do not have information if that is currently true or not. Regardless, the Court still has discretion under the second part of the statute (i.e. part 3) to permit disclosure. Disclosure is permitted where the parties seeking the information can demonstrate that there is reasonable grounds to believe the information is relevant to the proceedings, and the need for the information clearly outweighs the privacy interests of the individual, R.I.G.L. §5-37.3-6.1(3)(d).

In determining whether the need for information clearly outweighs the privacy of the individual, the court is directed to consider the following six factors.

(1) The particular purpose for which the information was collected. Here the information was collected for medical treatment purposes.

(2) The individuals reasonable expectation of privacy in the information. Here, one might assume that both Sullivan and Graca have an expectation of privacy. Yet, at the same time, they were in police custody while undergoing their treatment and, as such, your defendants are not ready to concede that point.

(3) The degree to which disclosure of the information would embarrass, injure or invade the privacy of the individual. Newport Hospital has indicated that the records contain "sensitive" information. The defendants have not seen the records and it is not known whether this is a standard "boiler plate" argument made by the hospital or whether the records do indeed contain "sensitive" information–whatever that means. Quite frankly, given the actions of Graca and Sullivan on the evening in question, it is hard to imagine how anything contained in their treatment records, for the night in question, can embarrass or injure them to any greater degree.

(4) The effect of the disclosure on the individual's future healthcare. This factor does not seem applicable as it is hard to fathom how disclosure could effect future healthcare of either individual.

(5) The importance of the information to the lawsuit or proceeding. Given the proximity of the statements made by Graca and Sullivan, the information contained in their

medical records is of great importance with regard to the ability of the defendants to properly cross-examine these witnesses and/or impeach their credibility.

(6) Whether the information is available from another source, including Rule 35 of the Superior Court Rules of Civil Procedure. The information is not available from another source as the confidentiality laws require judicial process to obtain the same.

In addition to the above arguments, state law has long favored disclosure when necessary to protect the integrity and validity of court proceedings. R.I.G.L. §5-37.3-4, first enacted in 1978, provides for confidentiality of healthcare information but lists over twenty exceptions that permit disclosure, most of which relates to the necessity of having such documents for court proceedings and law enforcement purposes. Moreover, in 1984, the Rhode Island Supreme Court ruled that a defendant's constitutional right of cross-examination was violated by the trial court's denial of his motion to obtain certain medical records relating to a key prosecution witness, which would allegedly demonstrate that the witness was in fact a drug addict and confined in a drug unit at the time she claimed that she witnessed the events (murders) in question. *State v. Parrillo*, 480 A.2d 1349 (R.I. 1984). There, the court ruled that the defendant was denied any access to medical records that may have been relevant in impeaching the testimony of the only surviving eye witness to the crimes for which he was convicted. *Id.* at 1355. It further ruled that blanket denials of access to a certain class of evidence, even if meant to prevent embarrassment to the witness on the stand, should not limit defendant's constitutional right to confront witnesses against him. Referring specifically to the statutory scheme relied upon here, by the hospital, the *Parrillo* court stated:

> We do not believe that such enactment, however beneficent it may be in other respects, can be allowed to abrogate the right of an accused to cross-examine thoroughly witnesses against him and thereby provide the jury with information which may affect its judgment on the ultimate issue of guilt or innocence. *Id.*

Indeed, the Rhode Island Legislature, in 1996, codified the *Parrillo* exception by enacting R.I.G.L. §5-37.3-6.3 entitled **"Exceptions** - (a) Nothing in this chapter shall be construed to interfere with the rights to confrontation and compulsory process secured to a defendant in a criminal prosecution pursuant to the State and Federal Constitutions." Although this statute limits itself to

criminal prosecutions, *Parrillo*, although it involved a criminal case, did not expressly limit its applicability to criminal prosecutions only. The civil defendant, in like fashion, has the right to cross-examine and confront witnesses and that should not needlessly be impeded.

For the reasons stated, the motions to quash and/or for protective orders, should be denied and the hospital should be compelled to comply with the subpoenas as issued.

Respectfully submitted,
DEFENDANTS,
By their attorney,

/s/ Michael J. Colucci
Michael J. Colucci, Esq. #3302
OLENN & PENZA, LLP
530 Greenwich Avenue
Warwick, RI 02886
PHONE: (401) 737-3700
FAX: (401) 737-5499

**CERTIFICATION**

I certify that I sent a true copy of the within on 8/31/06 to:

Armando O. Monaco, II, Esq.
P.O. Box 311
East Greenwich, RI 02818

Linn F. Freedman, Esq. (Attorney for Newport Hospital)
Nixon Peabody LLP
One Citizens Plaza
Providence, RI 02903

Dora S. Graca
Shaun Sullivan
341 Coggeshell Street
New Bedford, MA 02746

/s/ Maureen E. Sundin